STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

removes language to comply with the Single Subject Rule and I would ask that Senate Amendment #1 and Senate Amendment #2, we concur on House Bill 3415."

Speaker Lang: "There being no one seeking recognition the question is, 'Shall the House concur in Senate Amendments #1 and 2 to House Bill 3415?' This is final action. All those in favor will signify by voting 'aye'; those opposed shall vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Have all voted who wish? Mr. Clerk, please take the record. On this question there are 112 voting 'yes', 0 voting 'no' and 0 voting 'present'; and this Bill, having received the Constitutional Majority, is hereby declared passed. House Bill 3431, Representative Zickus. Is the Lady in the chamber? House Bill 3464, Representative Mautino."

Mautino: "Thank you, Mr. Speaker, Ladies and Gentlemen of the House. I move to concur in Senate Amendment #1 to House Bill 3464. This Bill cleans up some objections. Originally, House Bill 3464 dealt with the service contract issue. And once this Bill... it was unopposed in the House committee or on the House floor. When it got to the Senate, developed opposition there and Senator Walsh then convened negotiations with the home builders, the realtors, the unions, the plumbers, as well, and all parties sat down. They were able to agree to some language which would allow small business to continue to operate, prosper, and grow along with taking care of the concerns and putting some consumer protections in that makes sure that when you buy a service contract that there is something to stand behind it and I ask for your 'aye' votes."

Speaker Lang: "Representative Giglio."

Giglio: "Thank you, Mr. Speaker. To the Bill. I rise in support

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

of House Bill 3464, as amended.  And I'd like to especially thank the Sponsors, Representative Mautino and Senator Walsh.  The... their willingness to work with the contractors and the retail merchants to make an agreeable Bill that was not overly burdensome on the contractor or the service contract provider, yet also, provided a tremendous amount of protection for the consumer, that up until this time the consumer did not have.  So I would simply ask for your favorable support and again, congratulate the Sponsor.  Thank you."

Speaker Lang:  "Mr. Brady."

Brady:  "Thank you, Mr. Speaker.  Will the Sponsor yield?"

Speaker Lang:  "The Gentleman will yield."

Brady:  "Representative, I have a couple questions here for you. First question is, are new home warranties that cover the work of a builder and his or her subcontractors affected by the passage of House Bill 3464?"

Mautino:  "Answer: Number one, no."

Brady:  "Question... My second question, are home warranties different from service contract agreements?"

Mautino:  "Answer: Number two.  Yes, service contract agreements, by definition, are separate sales items above and beyond the cost of the product being sold.  Home warranties are included in the price of the home and are not regarded as service contracts and that is for the purchase of legislative intent as was agreed by all Members."

Brady:  "Thank you, Representative Mautino.  I want to compliment Representative Mautino and Senator Walsh for their hard work in this effort.  I encourage your favorable support."

Speaker Lang:  "Representative Black."

Black:  "Thank you very much, Mr. Speaker.  Will the Sponsor yield?"

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

Speaker Lang:  "The Gentleman yields."

Black:  "Representative Mautino, I grew up in a small heating and
        air conditioning business that my father ran for forty-some
        years and my brother runs now, and service contracts have
        become a very important part of that business. And I'm not
        sure that I understand all of the nuances of the Senate
        Amendment. Who are we exempting and why are we asking a
        service contract provider to comply only with certain
        Sections of this Act? Why not the entire Act?"

Mautino:  "I'm sorry, could you repeat the last part of the
          question?"

Black:  "Yeah, why are we exempting those people who sell you
        service contracts? And let me tell you, you can't buy
        anything today that they don't try to sell you a one, three
        or five year service contract. In fact, there are some
        retail stores that will wrestle you to the ground trying to
        get you to sign a service contract on a piece of
        merchandise. And I don't know, I'm just looking at our
        staff analysis, that some of these providers of service
        contracts will only have to comply with certain Sections of
        the underlying Act. What Sections are we exempting?"

Mautino:  "Actually, those...they will still have to comply with
          all of the consumer protection Sections. They will still
          have to do all of the recording and the recordkeeping. The
          original Bill would have required the purchase of
          additional, either insurance or having huge reserves, which
          basically took your small heating contractors and would
          have caused them to have to set aside the dollars they
          couldn't afford to on it. But will they still have to have
          the same consumer protections as the big guys that are out
          there."

Black:  "Do you know whether the Illinois Home Builders

                                                                    139

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                      May 20, 1998

Association appeared at any of the committee hearings on the Bill?"

Mautino: "As a matter of fact, they were one of the members of the negotiations. They did not appear in the House committee hearing on it, but they did appear in the Senate committee and also, in I believe, four or five of the meetings which addressed all their concerns, especially the area of new home construction. As a matter of fact, Representative Brady and I have just done the legislative intent that was requested by the home builders

Black: "Right... to ensure that that is structured and it was outstanding intent. How does it work in the case of the mass merchandisers today? And you hate to use names and give them the publicity. But you know, and there are lots of them out there who will sell you everything from a washer/dryer to a toaster and then ask you to sign up for a service contract. And I've always wondered at the time, because most of these huge discount stores do not have a service department. So, how is that going to be covered? If you buy a television set, for example, from Wal-Mart and they want you to take out a service contract, who then...who then it falls under the service contract protection? Cause the last time I checked and I could be wrong, but I don't think Wal-Mart Stores normally have a service department in their appliance division."

Mautino: "Okay. As far as the service contract, that's actually the reason that we did the original Bill. It gets to the underlying Bill. These companies would carry these service contracts that have either the reserves or an insurance contract. If you don't receive the satisfaction from that company, specifically, then you could go directly for reimbursement through the insurance carrier."

140

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

Black:  "So, in other words, if a large mass merchandiser is
        selling everything from small appliances to giant TV's, my
        experience is that they usually contract with a local
        individual who may own you know, a pickup truck and have
        some tools and a measure of expertise in fixing those.  But
        they sell you this service contract.  Obviously, we know
        why they sell the service contract.  They're hoping that it
        doesn't break down and the service contract is a little
        added gravy, if you would.  But my concern is, then, if I'm
        signing... if I have a huge store like Wal-Mart and I
        contract with a local mechanic and he comes to my house and
        he says, 'You know, I can't fix this washing machine.  I
        really don't know how to fix this particular washing
        machine.'  But I have a contract with Wal-Mart, then is
        Wal-Mart going to have to stand behind the machine and find
        a contractor to fix it?"

Mautino:  "In the scenario that you gave, the person who is
          selling that contract and we'll use Wal-Mart for the
          example; in Section 20 under the reimbursement policy, if
          they could not live up to that warranty, they could
          reimburse you as the consumer because the idea is to
          protect the consumer here.  Now, so, the liability would
          still fall back on the person who sold you that contract."

Black:  "Well, see, that's what's got me confused.  I know I grew
        up with Sears and Roebuck, Montgomery Ward, and they had
        service departments and I think Sears still does."

Mautino:  "Yes, they do."

Black:  "But there's a lot of these mass merchandisers who sell
        everything and I know they don't have a service department.
        Yet, they're selling you a service contract and I assume
        enter into a subcontract with a local mechanic or a local
        shop to fix it.  So, am I still protected under that case?"

141

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

Mautino:   "Yes,  you  are.  As a matter of fact, I'm glad that you
           brought that up.  One of the points in here is  that  those
           smaller  shops  are  still  required  to  carry  all of the
           disclosure and reporting requirements.   They  would  be  a
           subcontractor,  but  your  contract  is with the person who
           sold you the merchandise.  But even if you had  a  question
           as  to  who  did  the work and you weren't happy with their
           work, then you could come back directly  to  the  insurance
           that's backing your washing machine for reimbursement."

Black:    "Okay.   The  last question, and I ask this simply because
           in my area, other than some of the mass merchandisers  that
           have  moved  in,  we still have a awful lot of family-owned
           businesses.  John's Appliance  Store  that  sells  washers,
           dryers  and  refrigerators  and  ranges, Frank's Television
           Store  that  sells  televisions  and  maybe  a  stereo   or
           something of that sort.  But they're very small businesses.
           They  probably do a relatively small gross and they usually
           have somebody in the back room to do service.  Now are they
           going to have expensive requirements put on their  business
           so that they can issue a service contract?"

Mautino:   "Actually,  that  is  the  point  of Amendment #1 in the
           Senate.   The  Bill  that  we  originally  pass  had  very
           expensive requirements that the small guy could not keep up
           with.

Black:    "Okay."

Mautino:   "And  so  this  says that you've got to comply with the
           consumer sections of the Bill, but you're not going to have
           the undue burdens that were in the original Bill  and  thank
           goodness, the Senate read it."

Black:    "Okay.  So, it's certainly not your intent.  This is not a
           Bill  that  will  make it more difficult for the rural main
           street merchant to continue doing business and to  continue

                                                              142

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                      May 20, 1998

to offer service contracts?"

Mautino: "The entire intent of the Amendment and what's been accomplished here is to allow them to continue with their service business with some consumer protections, but without the undue burdens."

Black: "Okay. All right."

Mautino: "That was my intent, as well, and the intent of the entire Body. I'm glad that this was brought up in the Senate so we could correct it."

Black: "Okay, good. One last question, Frank. Excuse me, Representative. Is... Did the chamber sign in or the National Federation of Independent Business, since they represent a lot of very small folks in rural areas? Did they sign in? Were they neutral or express an opinion?"

Mautino: "To the best of my knowledge, I do believe, Bill. I don't have it in front of me. I had the listing earlier, I just can't find it here. But I do believe that the NFIB did sign off and agree to this."

Black: "Great."

Mautino: "I think that was one of the ones that were listed."

Black: "Great. Okay. That's fine. Thank you. I appreciate your indulgence."

Speaker Lang: "Mr. Mitchell."

Mitchell: "Thank you, Mr. Speaker. Will the Sponsor yield?"

Speaker Lang: "Yes."

Mitchell: "Representative Mautino."

Mautino: "Are you reading from a Calendar?"

Mitchell: "Well, backwards. This is for you to read. I think we've got to go to committee and do something for Ron Stephens' Red Ryder BB gun or something. Representative, I've had a lot of calls from all of the plumbers, heating contractors in my district, really concerned, and you've

143

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                          May 20, 1998

probably answered this but just to clarify one more time for me. Does this Amendment take out the requirement that they have to have a $100,000,000 in assets or 40% of the cost of their service contracts in reserve or insuring their service contracts with a contract insurer?"

Mautino: "Yes, it does and that was...it was taken out specifically. Those are the provisions that puts an undue burden on the small contractors, the plumbers, the heating and cooling people; those that their very existence of their business is based on the service contract and repeat business."

Mitchell: "So, with this Amendment then, we probably won't have that objection from our local plumbers?"

Mautino: "They are agreed and have signed off on it. As a matter of fact, as Representative Giglio had stated, along with the mechanical engineers, as well."

Mitchell: "Okay, thank you, Representative. I have no further questions."

Speaker Lang: "Representative Dart."

Dart: "Will the Sponsor yield?"

Speaker Lang: "Gentleman yields."

Dart: "Are there any opponents to this?"

Mautino: "What's that?"

Dart: "Any opponents to this?"

Mautino: "No, and actually there weren't any the first time in the House, but then it got to the Senate and somebody actually read it. So it's now been fixed. There are no opponents to the Bill. Everyone is agreed."

Dart: "Thanks, Frank."

Speaker Lang: "Representative Brown."

Brown: "Thank you, Mr. Chairman (sic-Speaker). Will the Sponsor yield?"

144

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                               May 20, 1998

Speaker Lang:  "The Gentleman will yield."

Brown:  "And  I  apologize  for  asking.  It was very difficult to
        hear some of the answers.   But  my  question  specifically
        relates  to  those  people  who,  like  the heating and air
        conditioning contractor who I call to come  and  clean  the
        furnace in the wintertime, change the filters, come back in
        the   springtime,   put  in  new  filters,  clean  the  air
        conditioner.  Those are the people who are  calling  saying
        that  they  have this great undue burden.  Are they covered
        by this legislation?"

Mautino:  "This legislation, and thank you for bringing  that  up.
          That is the same question that Representative Mitchell had.
          The  reason  for  the negotiations in the Senate, in Senate
          Amendment 1, were to take care of the undue burdens in  the
          underlying Bill for the small companies that are out there,
          those  that  did not have a $100,000,000 in assets or those
          that could not afford to put 40% of their service contracts
          into reserve.  So that has been taken out of there.   And we
          still have the accountability  portions  for  all  consumer
          protections  and  it  should be because it's an unregulated
          area where a lot of consumers  go  out  and  they  purchase
          these contracts and you want to know that there's something
          standing  there  behind them.  So you have to  do  the
          recordkeeping  as  a  small guy.  But all the concerns were
          taken care of at the table from  the  heating  and  cooling
          guys,  from  the  plumbers,  from the unions, from the home
          builders, from the realtors.  And I do believe  that  after
          quite a bit of work they did get it settled."

Brown:  "People who do snowplowing, people who do landscaping on a
        commercial  basis,  these people are also covered under this
        legislation?"

Mautino:  "There are no opponents and they've  all  been  brought,

                                                              145

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

and we made sure that. And I had asked Senator Walsh if all those who were involved and opposed to this legislation had their concerns taken care of and I was assured that that was correct."

Brown: "And they have to register with someone, is that correct? If you sell a service contract for heating and air conditioning?"

Mautino: "If you provide a service contract, then you have to register with the Department of Insurance."

Brown: "Okay. Thank you."

Mautino: "And so, if someone has a question they can call the Department of Insurance, or if they have a complaint, they would have that on record that you're selling that type of consumer product."

Brown: "Thank you."

Speaker Lang: "Mr. Leitch."

Leitch: "The Gentleman yield?"

Speaker Lang: "Yes, he will yield."

Leitch: "Representative, where did the 100,000,000 number come from originally?"

Mautino: "Retail Merchants' Association. That was structured as the... You had to either have over a 100,000,000 in assets or else you had to set...if you did not have that level of assets, then you had to go and set aside 40% in reserve or else purchase an equivalent amount of insurance that would cover the amount of contracts that you had sold to the consumers. That way, in case of a default, there would be some recourse."

Leitch: "One of the concerns I think we've all seen starting to occur is the large utilities trying to get into the service contract business and squeeze out the little guys in our communities. Do you think that that 100,000,000 number

146

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                      May 20, 1998

reflects that situation?"

Mautino:    "I do believe... Well, that was one of the concerns that
            caused the Amendment to be drafted.  That was also brought
            up very strongly by the IBEW who had the concerns of the
            utilities coming in and now selling those services that
            they're doing and they, after, I think, three or four
            negotiating sessions, settled on it to make sure that
            they're, the folks who are providing these, were
            protected."

Leitch:     "The other point I would make is while, yeah, they don't
            have to come up with some expensive bond money, this is yet
            more paperwork.  You know, what kind of paperwork are we
            now imposing on the small people? Most of the ones I know
            can't stand yet another form coming from the state for yet
            another somebody's good idea.  They're overwhelmed by all
            these forms that they have to spend all their time, small
            guys, filling out."

Mautino:    "Okay, what... It's going to become a form contract.
            But what they have to do and I think it makes imminent
            sense, is, if you're going to sell these contracts to
            people, someone should be notified on it and that is
            notification of the Department of Insurance, and you must
            list on your disclosure what the terms are and so you got
            to keep a record.  So, if I sell you a contract, I have to
            keep in file, which I would normally do in my business
            anyway, what my terms and my agreement are with you on this
            contract.  It'll have that disclosure set out and I believe
            they're creating a specific form for it because there's
            requirements of what has to be disclosed on that contract
            itself."

Leitch:     "As you know I have great respect for you as the Sponsor
            and as an individual, but I'm very concerned.  I think the

                                                                        147

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

reason there may not be any opponents showing up against the Bill is because so many of these 'mom and pop' outfits are hard at work in the communities throughout Illinois and they're not aware of this measure. And I think too often we just continue to pile on and pile on more and more paperwork on the smaller entities and those are people, I think, each of us should be concerned about. So thank you very much."

Speaker Lang:   "Representative Skinner."

Skinner:   "Mr. Speaker, Members of the General Assembly, I think I finally figured out what this Bill is going to do, and it's not what the Sponsor intends, I'm sure. But when your local Culligan man comes around and says, 'Hey, would you like some clean water?' He's going to have to have a $100,000,000 behind him or else he's going to have to set aside 40% of the money. Is that correct?"

Mautino:   "Actually, that was the problem with the original Bill. That is what the Amendment addressed and took out. That was the complaint from all of the small service contract guys. That's why we had to do Amendment 1, so that they would not be required to have a 100,000,000 in assets or keep 40% in reserve. Many of these companies, incidentally, operate off of a performance bond anyway if they're going out in the market to do it, or have the insurance to back it up. That was the provision which we needed to change to ensure that we didn't hurt the local Culligan guy."

Skinner:   "All right. Well, I've got a plumbing contractor in my hometown called Sherman Plumbing. It's been around for, I don't know, as long as I've lived there, at least 40, 50 years I would guess, maybe longer than that, an established business. And what are they going to have to do?"

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

Mautino:   "If I might on this, in the chambers here we guess on
           what the outcome are going to be a lot of times, but I
           think on this one I'd like to ask a real plumber.  I'd turn
           this over to Mr. Giglio.  What affect does this have?"

Speaker Lang:   "Mr. Giglio."

Giglio:   "Thank you, Mr. Speaker and fellow Legislators, if you
          could, just bear with me for one second.  This Bill
          provides protection for the consumer that before this, it
          did not have.  It also provides so that the contractor is
          left off of some of the provisions that should not apply to
          the contractor.  For instance, in the event that a
          contractor provides service contracts and he charges people
          monies for that contract in advance, say, $50 for a furnace
          clean and check or whatever the case may be.  Right now, in
          the event that that contractor goes belly up, the consumer
          has no protections.  Now, bear with, Cal, for one minute
          please.  The consumer has no protection.  There's no place
          for them to go.  Under this legislation the contractor
          would be required, if they provide service contracts, the
          contractor would be required to file with the Illinois
          Department of Insurance.  And it's a good thing."

Speaker Lang:   "Mr. Skinner."

Skinner:   "What?  File what?"

Giglio:   "Pardon me?  They will have to file the listing of the
          types of service contracts they provide; annual amounts
          that the contracts are worth and I believe that's it.
          Frank, is that...  I think that's all there is that they
          need to provide to the Illinois Department of Insurance."

Skinner:   "What's the reason for this Bill?  I've had no
           complaints."

Giglio:   "Because the consumer has no protection from contractors
          that don't stand behind their contracts, that charge them

149

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                          May 20, 1998

monies and don't provide the service. There's no place for a consumer to go to."

Skinner: "If the consumer is dumb enough to go to a heating contractor that isn't named Giglio Plumbing and hasn't been around for three decades or four decades... I just don't understand why we have to be messing around with small business. We have the Attorney General who has an active consumer complaint division, now we're putting a second department in. If I could ask the Sponsor another question. Will this allow utilities to offer service contracts or can they do that already?"

Speaker Lang: "Mr. Mautino."

Mautino: "Okay. In answer to your question, first of all, anybody can offer a service contract right now. The point is, we don't regulate them. And in here... If I'm going to sell you a contract, I'm required to tell the Department of Insurance that I'm selling you or anyone else in this Body a contract and let's use Representative Giglio's example, a contract for cleaning the furnace for $50. You're going to pay that in advance. What I have to provide to the department is what the consumer protections are. I have to tell them clearly that the consumer is allowed to cancel this contract. I cannot...that the retailer cannot retain a cancellation fee of more than 10%of the contract or $50, whichever is smaller. It says exactly what the consumer themselves can expect. So we don't currently do it now. As to your questions for utilities, they can already offer service contrac..."

Speaker Lang: "Mr... Representative Tom Johnson yields his five minutes to Mr. Skinner. Please proceed."

Skinner: "Well, I guess I have a conceptual problem here. I have a conceptual problem. It appears we are... I mean, this

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                           May 20, 1998

Bill attempts to regulate small business more than it is already regulated, as well as large business, obviously. What makes you think the Department of Insurance hasn't got its hands just totally full with regulating insurance companies?"

Mautino: "The Department of Insurance took a look at this and had agreed and signed off on the language. That's something that they can do and something that should be done in the interest of the consumers. For example, we don't operate them now, so an example that you gave me earlier, if that person...that person who...who you bought the service contract with goes belly up, as the person who paid good hard earned money to get that, you're out of luck here in the State of Illinois. We don't regulate it. And so... And it's not a big regulation. You have to send a form to the department and say, I'm going to sell this contract and this guy is allowed to cancel or if he does cancel here are my terms."

Skinner: "But he has to put up 40..but he has to put up 40% of the money."

Mautino: "No. That's what the Amendment took out. That's what we're concurring in. If you'd take a look... Please take a look at the Amendment."

Skinner: "Well, tell me what..."

Mautino: "You've got to speak apples to apples here. What you're talking about is the old Bill. The new Bill does not require the small businesses to have a 100,000,000 in assets. It does not require them to put up 40% of the value of their contracts, nor purchase that insurance policy. It was done because your small guys can't afford..."

Skinner: "So what does a small guy have to do? He has to send

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                        May 20, 1998

some form to the Department of Insurance."

Mautino:  "Right."

Skinner:  "They have to send this?"

Mautino:  "And they have to send that form, they have to keep on
file and tell people what is in the contract they just
bought, plainly."

Skinner:  "Well, that's the Consumer Fraud Division of the
Attorney General's Office. That's their role. Why are we
giving to the..."

Mautino:  "Well, actually, this provides the recordkeeping so the
Attorney General can do their job. Right now, there are no
records."

Skinner:  "Who's exempt?"

Mautino:  "Okay. A service contract provider who is a
manufacturer or a wholly owned subsidiary of the
manufacturer of the product or the builder, seller or
lessor of the product that is subject of the service
contract, is required to comply only with Sections 30, 35,
45 and 50 of this Act. If you go there, those are the
consumer protections of the Acts and the disclosure
requirements. A service contract provider who sells a motor
vehicle or who leases, but is not the manufacturer of the
motor vehicle, but is subject to the service contract, must
comply with this Act in its entirely (sic-entirety).
Basically, we've taken out the concerns of your small
heating and cooling folks, the plumbers, those home
builders, the realtors, those who have raised objections,
and I do understand the NFIB, who's the spokesman of small
business, is in favor of this."

Skinner:  "Who wants this Bill? I mean, why... I mean, I realize
the first time this was up, probably everybody voted for
it, probably I voted for it."

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                May 20, 1998

Mautino: "You did."

Skinner: "But what's the need for this Bill?"

Mautino: "The need for this Bill is to protect consumers.  If you
          have paid..."

Skinner: "No, No.  How many consumers have complained to your
          office?"

Mautino: "May I ask you a question?"

Skinner: "Why not?"

Mautino: "Why not?"

Skinner: "We're in free form."

Mautino: "Absolutely.  If you went out and paid money and for
          example,  my family business was a beer distributorship.  I
          buy cooling contracts.  So if I paid $10,000  up  front  to
          this company, or if you did, and they went under tomorrow,
          now I have no recourse under today's Illinois law."

Skinner: "Sure you do, you call Uncle Guido.  That's what I'd
          do."

Mautino: "You know, that's a thought."

Skinner: "That's a thought."

Mautino: "That's a thought, but the average consumer might not be
          able to do that.  He would just basically, the small
          business guy, would be out a lot of money because we as a
          state don't regulate it.  So, if we don't require anyone to
          back up a service contract they sell.  That's what...
          that's the need."

Skinner: "Well, how is it backed up by sending a piece of paper
          to the Insurance Department?"

Speaker Lang: "While we're waiting for Mr. Mautino's answer, the
          Chair recognizes Representative Shirley Jones."

Jones, S.: "Yes, Mr. Speaker."

Mautino: "The department's weighing in.  Okay, we'll be right
          back here."

                                                          153

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                  May 20, 1998

Speaker Lang: "Go ahead. Mr. Mautino. Mr. Mautino, wait one
moment. Representative Jones."

Jones, S.: "Yes, Mr. Speaker, I have a personal privilege. I
would like to introduce Andrew Jackson Language Academy
that's...within my district. Will you please stand up?
Also, Art Turner's son is in this classroom and also my
grandson."

Speaker Lang: "Welcome to Springfield. Welcome. Mr. Mau...
Thank you, Representative Jones. Mr. Mautino, do you have
the answer to Mr. Skinner's question?"

Mautino: "Am I back on? Okay. The department expressed a
concern here and what they have said, their inability right
now, also under current law, is to get to the companies
that are just selling the service contracts. You and I get
together and decide we are going to sell service contracts.
Right now they have no way to regulate and some of these
are large companies. As well, so that they can go out and
also removes the ability for potential fraud. They would
have financial disclosure and financial requirements as
well. That's the department's concern."

Speaker Lang: "Mr. Stephens."

Stephens: "Well, I suppose if the Bill were limited to just those
groups that specialize in the service contracts and not in
the original provision of equipment or supplies, maybe
there would be some...more merit to it. I believe that the
House erred when we passed the original Bill out,
Representative. I just...I just don't agree that..."

Mautino: "I agree that the original Bill, once it went to the
Senate, needed to be corrected because of its impact on
small business."

Stephens: "Well, I certainly understand that and agree with you
that Senate Amendment 1 makes the original legislation that

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                        May 20, 1998

    we passed to the Senate a little easier to live with.    But
    on  this side, a lot of us are stuck with the position that
    rethinking the original Bill.    We  believe  that  this  is
    really  just  going  to be  detrimental  to a lot of small
    businesses, mom and pop kind of shops in downstate Illinois
    that you and I are so familiar with, that...trying to  make
    a go of it.  We think that the overall Bill, even with your
    Amendment  that  improved it, is probably not ready at this
    time for consideration a good public policy.  I would  just
    stand  in  opposition.    I  think  this  is  an  anti-small
    business  Bill  in the bottom line.   I say that with all due
    respect, and I know that your attempt  is  well-intentioned
    but  I  disagree  with  the  net  result.   So  I  stand in
    opposition.  Thank you, Mr. Presiding Officer."

Speaker Lang:  "Mr. Lawfer."

Lawfer:  "Thank you very much.  Will the Sponsor yield?"

Speaker Lang:  "Mr. Mautino yields."

Lawfer:  "I've been listening to some of this discussion.  But  if
    I was a small business and failed to meet the requirements,
    what would the penalty be in this regard, Representative?"

Mautino:  "Could you repeat that?  I couldn't hear..."

Lawfer:  "If  I  was a small business, say I was a business of one
    or two people providing, for example, I think  they  should
    cover  a  TV repair shop that had one or two employees.  If
    I'd  failed  to  keep...do  the  recordkeeping  that   was
    necessary   and  I  assume  there  would  be  recordkeeping
    necessary, if I failed to do that, what would  the  penalty
    be?"

Mautino:  "If  you  are  not  living up to your service contracts,
    then the Director of the Department of Insurance can  order
    you to not sell them, to cease and desist."

Lawfer:  "A C&D, is that right?"

155

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                          May 20, 1998

Mautino:    "Yeah."

Lawfer:     "Okay.   And   now   what   would...how   would   that   be
            determined?   Would that...could that   be   determined   by   a
            complaint of a..."

Mautino:    "A  complaint  would  be  filed against you and then the
            department would   come   in   and   investigate   just   as   the
            Attorney  General  would if you had to go a different route
            with a complaint   against   fraud   or   whatever   deed.     The
            department would come in, they would take a look and see if
            you're  living  up to what you've promised the consumer you
            would do.  If you don't, then you will lose the ability  to
            sell   service contracts.   So if your word's no good, you're
            breaking your words to your customers, the department will
            be  able  to  come in on a consumer complaint and say, 'You
            can't do this.'"

Lawfer:     "Well, Representative, I voted  for  this  Bill  when  it
            passed  out  of here.  I think it passed out 115 to 0, so I
            assume I voted for it and...but  it  has  definitely,  the
            Senate  Amendment  has improved it.  But on the other hand,
            in a rural area where I live, much  similar  to  yours,  if
            somebody  doesn't  live  up to the service contract we have
            the ability to go somewhere else and  take  our  business
            elsewhere.   And I think that's much more effective than the
            enforcement  of  this  particular  Bill and therefore, I am
            going to look very closely at this before the vote's taken.
            Thank you very much for your indulgence, Representative."

Speaker Lang:   "Mr. Mautino to close."

Mautino:    "Thank you.  Ladies  and  Gentlemen,  I  appreciate  the
            amount  of  time that we've spent on the effort.  We've had
            some good questions.  The original Bill that  passed  was
            designed  to  provide consumer protections in an area which
            is unrelated now and that's service contracts.  So that  if

                                                                    156

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                          May 20, 1998

a business goes out and takes the consumer's money and says
that they're going to provide this service, then they must
do it. The original Bill was flawed in that it had
thresholds and protections that a small business could not
meet. Therefore, we removed those requirements to allow
the small business comp...the small businesses with their
agreement and the support of all the business groups to do
this. Now this is model legislation which is being done
nationally, as well, but here it provides consumer
protections where none exists right now. It will require
that if you sell someone a contract that you register with
the Department of Insurance and tell them that you are
selling an insurance contract. That's what this is. Then
you would have to fully disclose to the person who is
buying this contract exactly what they're in for, what
their rights are in cancellation and if they cancel early,
how much they may be charged. All these are specific items
which were drawn into it to protect the consumer. The
Amendment itself took out the objections of small business,
of home builders, the plumbers, the contractors, the
mechanical engineering companies that provide these
contracts, and they are in favor of it. Representative
Giglio, in the real world, lives by these contracts. This
is the man who said that they want this for the consumer
protection and also that this Bill will not damage the
small business. He's a small business owner, so am I. Our
objective here is to put in the consumer protections that
we don't have in the law now. It is agreed. There are no
opponents, and to that I give the credit to Senator Tom
Walsh, who spent a lot of time negotiating this between the
business groups, the labor unions who are now in favor of
it, the...basically, everyone who raised objection, and

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

            rightly so, on the original Bill. So, with that, I ask you

            for an 'aye' vote."

Speaker Lang:  "Mr. Granberg, for what reason do you rise?"

Granberg:  "Thank you, Mr. Speaker, Ladies and Gentlemen of the

            House. I wonder, I just came onto the floor and I had a

            question on this Bill.  I heard it while I was in my

            office.  I wonder if you would extend me the courtesy to

            ask the Sponsor one question before you actually ask for a

            roll call on the vote?"

Speaker Lang:  "Proceed, Sir."

Granberg:  "Thank you.  Mr. Mautino, the same courtesy we extended

            the Gentleman from Danville two days ago, if I might add.

            Mr. Mautino, under Griffin v. Washburn, does the department

            have the authority to negotiate those third party

            contracts?  Is that the intent of what this Bill is doing?

            Under the court case, the court case of Griffin v.

            Washburn, does the department have the authority to

            negotiate or get involved in third party contracts?"

Mautino:  "That's actually what they're trying to get to with this

            Bill, so they would have the ability and the authority over

            those they don't currently have now."

Granberg:  "So they don't have the ability right now to oversee

            that process?"

Mautino:  "Correct.  They cannot oversee those and that is the

            case which was cited in committee as well."

Granberg:  "Oh, I'm sorry. That's why I just came out.  I didn't

            know for sure.  Because this is a pro-consumer measure.  I

            just wanted to make sure they didn't have the authority

            currently. That's what you're attempting to do."

Mautino:  "That's correct."

Granberg:  "Thank you very much."

Speaker Lang:  "The question is..."

                                                        158

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                       May 20, 1998

Mautino:  "You don't really want me to close again do you, Lou?"

Speaker Lang:  "No, we don't need you to close again.  The
          question is, 'Shall the House concur in Senate Amendment #1
          to House Bill 3464?'  This is final action.  All those in
          favor shall signify by voting 'aye'; those opposed shall
          vote 'no'.  The voting is open.  Have all voted who wish?
          Have all voted who wish?  Have all voted who wish?  Mr.
          Clerk, please take the record.  On this question, there are
          96 voting 'yes' and 18 voting 'no', and this Bill, having
          received the Constitutional Majority, is hereby declared
          passed.  House Bill 3431, Representative Zickus."

Zickus:  "Thank you, Mr. Speaker.  Senate Amendment 1 becomes the
          Bill.  It retains the intent of the original Bill as passed
          by the House, but it reflects an agreement between the
          Department of Public Aid, various managed care community
          networks, the Illinois State Medical Society, Illinois
          Hospital and Health Systems Association, Cook County
          Hospital, and the Illinois Association of HMOs.  The
          Amendment will permit the managed care community networks
          to contract directly with DPA to provide health care
          through programs administered by DPA.  The HMOs are neutral
          on it.  I know of no opponents."

Speaker Lang:  "There being no one seeking recognition the
          question is, 'Shall the House concur in Senate Amendment...
          Sorry, Mr. Black, your light was not on as I spoke, but it
          is on now."

Black:  "That's right.  Thank you, Mr. Speaker.  Your left arm was
          covering my light.  Will the Sponsor yield?"

Speaker Lang:  "The Lady will yield.  Representative Hartke in the
          Chair."

Black:  "Representative, is an HMO a service contract?"

Zickus:  "I would think so."

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

Black:  "Do they have to register now with the Department of
         Insurance?"

Zickus:  "Yes."

Black:  "That's what I would think.  I mean, we're going to push
         this service contract thing... If I'm in a prepaid legal
         service, is that a service contract?"

Zickus:  "As it applies to the last Bill?

Black:  "It's very interesting.  Very interesting.  And so there's
         no opposition to this Bill?"

Zickus:  "There is no opposition that I know of."

Black:  "Just like there was no opposition to the last Bill.  Let
         the record reflect that my brother was opposed to the last
         Bill."

Zickus:  "Okay.  Well, you're... I don't know of any opposition to
         this Bill, Representative Black."

Black:  "Oh, all right.  Thank you.  But it might be a service
         contract, might'n it not?"

Zickus:  "Pardon?

Black:  "We'd be very interes... I mean, this could be construed
         as a service contract.  If I sign up with a managed care
         network to take out my tonsils or whatever, then it could
         be construed as a service contract."

Zickus:  "I think that that's something totally different."

Black:  "Well, I hope so.  Well, we'll see.  Thank you."

Speaker Hartke:  "Further discussion?  Seeing no one is seeking
         recognition, Representative Zickus to close."

Zickus:  "I would appreciate your 'aye' vote on concurring with
         Senate Amendment 1."

Speaker Hartke:  "The question is, 'Shall the House concur in
         Senate Amendments #1 to House Bill 3431?'  This is final
         action.  All those in favor signify by voting 'aye'; those
         opposed vote 'no'.  The polling is open.  Have all voted

                                                            160

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

who wish?  Have all voted who wish?  Have all voted who
wish?  Mr. Clerk, take the record.  On this question there
are 116 Members voting 'yes', 0 voting 'no' and 0 voting
'present', and the House does concur in Senate Amendment #1
to House Bill 3431.  Mr. Clerk, what is the status of House
Bill 1225?  Excuse me, Senate Bill."

Clerk Bolin: "Senate Bill 1225, it's on the Order of Senate
Bills, Third Reading."

Speaker Hartke: "Place that Bill on Second for purposes of an
Amendment.  For what purpose does Representative Black seek
recognition?"

Black: "Mr. Speaker, I have an inquiry of the Chair, if I might."

Speaker Hartke: "State your inquiry."

Black: "Will the Rules Committee be meeting prior to adjournment
today?"

Speaker Hartke: "That's a very good question.  I'll check."

Black: "Well, Mr. Speaker, on behalf of many of us and I don't
think this is a partisan issue and I don't want to get into
another Motion to Discharge, but I have filed House Joint
Resolution 66, and I'm sure many people will sponsor that
with me to disapprove the Compensation Review Board
package.  Now, none of those Resolutions have been reported
from Rules and I don't want to sit here in 24 hours and
vote on a budget that's going to have a significant pay
raise for elected officials in the State of Illinois, when
we couldn't quite do some of the tax relief measures that
we have discussed for most of this Session.  So, I, rather
than file the written Motion and take the time of the
chamber, I would just like the record to reflect that I am
concerned that HJR 66 has not been reported from Rules as
has...as none of the Resolutions filed that would
disapprove the Compensation Review Board package request

161

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

have made it out of Rules. And I think before we move to
the budget, it would be nice that we could be on record as
to what we intend to do with the Compensation Review Board
recommendation. And so, I'll not file the written Motion
and move to discharge today but I will first thing in the
morning if we don't hear from Rules. And I thank you for
your indulgence."

Speaker Hartke: "Thank you, Mr. Black. Representative Lang in
the Chair."

Speaker Lang: "On page 3 of the Calendar, under Senate Bills,
Third Reading, there appears Senate Bill 1289. Mr. Clerk,
please read the Bill."

Clerk Rossi: "Senate Bill 1289, a Bill for an Act amending the
Illinois Vehicle Code. Third Reading of this Senate Bill."

Speaker Lang: "Mr. McAuliffe."

McAuliffe: "Thank you, Mr. Speaker, Ladies and Gentlemen of the
House. Senate Bill 1289 is the Bill that deals with the
'huffing'. It amends the Illinois Vehicle Code of DUI
provision to prohibit driving under the influence of any
intoxicating compound in a driver's blood or urine, to a
degree that renders the person incapable of driving safely.
It also defines what intoxicating compound is and I'd be
happy to answer any questions."

Speaker Lang: "The Gentleman moves for the passage of Senate Bill
1289, and on that question, the Chair recognizes
Representative O'Brien."

O'Brien: "Thank you, Mr. Speaker. I rise in very strong support
of this Bill, and want to commend the Sponsor for working
not only with the Senate Sponsor, Senator Dudycz, but also
with the Illinois State Police regarding some concerns they
have. And this Bill specifically deals with a problem in
the statute that does not allow for prosecution for driving

162

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

under the influence for people that use inhalants.  So,  an

individual  can  be  under the influence of an inhalant and

not be eligible to be charged for the  offense  of  driving

under  the  influence,  and  it  has been a serious problem

for... within the county of Will.  And  I  would  certainly

urge an 'aye' vote."

Speaker Lang:  "Mr. Black."

Black:  "Thank  you  very  much,  Mr.  Speaker.   Will the Sponsor

yield?"

Speaker Lang:  "Gentleman yields."

Black:  "Representative, is there a  definitive  outline  of  what

constitutes an intoxicating compound in statute?"

McAuliffe:  "Yes, there is."

Black:  "So,  if  it is not... if it is not specifically listed in

statute, then it could not be used in this law.  Correct?"

McAuliffe:  "Correct."

Black:  "All right, because Representative Erwin was standing over

here in front of my desk, and I found that her perfume  was

an  intoxicating  compound,  and I wanted to know if it was

a...  if  it  was  listed  in  the  underlying  statute?

Particularly, when she told me it was 'Iceabutal #5.'"

McAuliffe:  "No, that wouldn't be included in this Bill."

Black:  "Well,  all  right.  I just wanted to make sure she didn't

get in trouble.  I thank you  for  that...  answering  that

question.  I'm trying to find the Senate vote on this."

McAuliffe:  "The Senate vote was 54-0."

Black:  "You  know  one  of these days we're going to get one over

here where all 58 actually voted on it.  But, okay.   Thank

you."

Speaker Lang:  "Mr. McAuliffe to close."

McAuliffe:  "I just ask for a favorable vote."

Speaker  Lang:  "The  question  is,  'Shall  this Bill pass?'  All

163

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

those in favor shall signify by voting 'aye'; those opposed
shall vote 'no'. The voting is open. Have all voted who
wish? Have all voted who wish? Have all voted who wish?
Mr. Clerk, please take the record. On this question, there
are 116 voting 'yes', 0 voting 'no' and 0 voting 'present',
and this Bill, having received the Constitutional Majority,
is hereby declared passed. On page 9 of the Calendar,
under the Order of Nonconcurrence, there appears Senate
Bill 1286. Representative Zickus on a Motion."

Zickus: "Thank you, Mr. Speaker. I refuse to recede... oh, I'm
sorry. Yes, I refuse to recede from House Amendment #2."

Speaker Lang: "There being no discussion, the question is, 'Shall
the House refuse to recede from House Amendment #2?' Those
in favor shall say 'aye'; those opposed 'no'. In the
opinion of the Chair, the ayes have it and the House does
refuse to recede from House Amendment #2 and Representative
Zickus moves that a Conference Committee be appointed. Mr.
Clerk, Supplemental Calendar announcement."

Clerk Rossi: "Supplemental Calendar #1 is being distributed."

Speaker Lang: "Mr. Clerk, on Supplemental Calendar #1, there
appears Senate Joint Resolution 61. Representative
Cowlishaw."

Cowlishaw: "Thank you very much, Mr. Speaker. Ladies and
Gentlemen of the House, this is the Resolution which
proposes to deny certain of the mandate waiver requests
submitted by local school districts. If there are any of
you during this brief description of the actual
Amendment... or the actual Resolution, if any of you have
not had an opportunity to see the whole report with all of
the requests from all of the school districts, I have that
right here in my hand and any one of you is welcome to come
over and consult it. In fact, the only requests that are

164

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                    May 20, 1998

being denied in this particular Resolution are one in
relation to IGAP testing, requested by Norridge School
District #80. Two requests having to do with banked time
in relation to the amount of general state aid to be
received. Those requests were from Matteson School
District #162 and... oh both of them were from Matteson
School District 162, based upon two different types of
criteria. Then there is a request from Beach Park
Community School District #3, which has to do with
permitting substitute teachers to teach for 180 days in any
one school year as long as they did not exceed 90
consecutive teaching days in any one classroom. Now, my
friends, that is a very great departure from the current
leg... legal provisions regarding what a substitute teacher
must do to be qualified to be a substitute teacher and also
the maximum amount of time that person can spend in a
classroom in any one academic year. I would like to
mention to you that in denying this request from Beach
Park, the Legislature would be in complete accord with the
positions of both the Illinois Education Association and
the Illinois Federation of Teachers, both of which are very
strongly opposed to granting this request regarding
substitute teachers. Then there are 24 school districts,
which I will not list because it would take quite awhile,
requesting waivers from the new administrative expenditure
cap that was passed as part of House Bill 452 on December
2, 1997. I think it is apparent that there was a mistake
made in the drafting of that particular provision because
it was only intended, as I understand it, it was only
intended to apply to the salaries for superintendents.
Instead, it has been interpreted by the state board to
apply to almost any expenditure that would fall under the

165

STATE OF ILLINOIS
90TH GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

128th Legislative Day                                        May 20, 1998

general category of 'administration', even to the point of
expenditures for attorney fees in relation to liability.
Clearly, it was never the intention that there should be
any cap on that, since that is not something the school
district can control. So, it is suggested in this
Resolution that all of these requests be denied, and that
at the same time there should be revised language that
makes clear what the cap really does apply to, adopted
before the end of this Session. That language is already
drafted and is moving through the Senate. Finally, there
is one, there is one request... have another request from
Norridge in regard to the administrative contract but for a
slightly different reason. The fact is, that none of these
requests being denied would have any fiscal impact on the
state, whatsoever. I would add that I believe the State
Board of Education is in favor of denying the IGAP testing
exemption, the bank time and the bank time for the Matteson
School District. I find it rather interesting the State
Board of Education does not object to this drastic change
in the substitute teachers. That is objected to by the IEA
and the IFT. Mr. Speaker, I think it is important for us
all to realize that anything that is not denied in the same
language by both chambers, automatically goes into effect.
Since this is the only Resolution that still has time to be
adopted, I urge its acceptance."

Speaker Lang: "The Chair recognizes Representative Brown."

Brown: "Thank you, Mr. Speaker. On Senate Bill 3464, I
inadvertently voted 'no'. I wanted to vote 'yes'."

Speaker Lang: "The record will so reflect. Thank you, Sir. The
Chair recognizes Representative Persico."

Persico: "Thank you, Mr. Speaker. Will the Sponsor yield?"

Speaker Lang: "The Sponsor will yield. Let's take it easy on our