UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| AUTOMOTIVE PROFESSIONALS, INC., | ) | No. 07 B 06720 |
| | ) | |
| Debtor | ) | Judge Carol A. Doyle |

## MEMORANDUM OPINION

### I. Introduction

The following constitute my findings of fact and conclusions of law with respect to Automotive Professionals, Inc.'s ("API") motion to compel the Illinois Director of Insurance, Michael T. McRaith ("Director"), in his capacity as conservator of API's assets, to turnover any property of the estate in his possession and for an accounting of all such property. API argues that the Director is a "custodian" of API's assets pursuant to § 101(11) of the Bankruptcy Code, and therefore must turnover those assets pursuant to § 543(b). The State counters that (1) sovereign immunity protects the Director from any order of turnover issued by this court; (2) his actions in the state court proceedings fall within the regulatory power exception to the automatic stay in § 362(b)(4); (3) API cannot unwind its prepetition assignment for the benefit of creditors; (4) compelling turnover will harm API's consumer creditors; (5) API must seek leave from the state court to proceed with this motion; and (6) the Rooker-Feldman doctrine bars this court from ordering turnover of property in the control of the Director pursuant to a state court order of conservation. None of these arguments has merit. For the reasons set forth below, API's motion to compel turnover and an accounting is granted.

## II. Background and Facts

API is an Illinois corporation based in Schaumburg, Illinois. It sells vehicle service contracts to owners of vehicles. The purchaser pays API a fixed amount and API agrees to pay for the cost of certain vehicle repairs for a fixed period of time after the expiration of the original manufacturer's warranty. API has been registered with the Director as an authorized service contract provider under the Illinois Service Contract Act, 215 ILCS 152/1 *et seq.* (2006), since at least 2002. Each year the State has approved API's contract forms.

For the last three years, API has operated at a cash deficit. As of the commencement of this case, API had a cash shortfall of approximately $9 million in the reserve accounts relating to some of the vehicle service contracts. In the fall of 2006, API's management determined that it could not fix its financial problems and that it should wind down its operations. API executed an assignment of its assets for the benefit of creditors in February 2007. API's assets were transferred to the API Creditors Trust administered by the assignee, Mr. Michael Kayman, for the purpose of liquidating the assets and paying out the proceeds to creditors.

In March 2007, the Director filed a complaint against API and the API Creditors' Trust in the Circuit Court of Cook County. On the day the case was filed, the Director obtained an *ex parte* Order of Conservation and Injunctive Relief ("Order of Conservation") directing him to "immediately take possession and control of the property, books, records, accounts, business and affairs, and all other assets of ... API and API Creditors Trust...." In April, the Director filed a separate Complaint for Rehabilitation in state court seeking to "rehabilitate, wind down and terminate" the business and affairs of API under the Illinois Insurance Code. There has been no adjudication of any issues in connection with the second state court complaint.

API filed its bankruptcy petition in May 2007. The State of Illinois ("State") filed a motion to dismiss this bankruptcy case, arguing that the Director should be permitted to liquidate API under the Illinois Insurance Code. On June 12, 2007, the court denied the motion. In the meantime, on June 8, 2007, the court granted the motion of various creditors for appointment of a chapter 11 trustee. Frances Gecker ("Trustee") was then appointed as trustee in this case. Although API as debtor-in-possession filed the motion for turnover, the Trustee has since adopted the motion so the court will treat it as her motion.

### III. Turnover Under Section 543 of the Bankruptcy Code

The Trustee's motion seeks to compel the Director to turn over any property of the estate in his possession and to provide an accounting of all such property in accordance with § 543(b) of the Bankruptcy Code. Section 543(b) requires a "custodian" to "deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b)(1). Under § 101(11)(A), the definition of "custodian" explicitly includes a "receiver or trustee of any of the property of the debtor, appointed in a case or under a proceeding not under this title." 11 U.S.C. § 101(11)(A). Consequently, the Director, as a custodian of API's property, must turnover API's assets to the Trustee in accordance with § 543(b). See also In re Cash Currency, 762 F.2d 542, 553 (7th Cir. 1985). ("[A] third party may have taken possession, custody or control of the debtor's assets prior to the filing of a bankruptcy petition. If such party

is a custodian within the meaning of 11 U.S.C. § 101(11), it must turn over the property of the debtor to the bankruptcy trustee.").

Despite this clear obligation under the Bankruptcy Code, the State raises six arguments against turnover in its response to the Trustee's motion. First, the State asserts that it is immune from the turnover action under the Eleventh Amendment and the doctrine of sovereign immunity. Second, it contends that the Director's actions are excepted from the automatic stay under § 362(b)(4) as part of the State's regulatory power. Third, the State asserts that the Trustee cannot recover assets that API voluntarily transferred prepetition in the assignment for the benefit of creditors. Fourth, the State contends that compelling turnover will irreparably harm API's consumers across the country. Fifth, it argues that the Trustee cannot maintain an action against the Director without leave from the Illinois court that issued the Order of Conservation. Finally, the State asserts that the Rooker-Feldman doctrine prevents this court from ordering the Director to turn over property. Despite their number, none of the State's arguments has merit.

The court notes that the State raised the first three arguments - sovereign immunity, the regulatory power exception to the automatic stay and the lack of assets to administer in this case - in support of its motion to dismiss this bankruptcy case. In denying that motion by written opinion issued June 12, 2007, the court rejected all three arguments. However, to make the record on this motion complete, the court will restate its analysis of those issues here.

A.    **Sovereign Immunity**

The State first argues that this court does not have the power to require the Director to turn API's assets over to the Trustee. It argues that the State has sovereign immunity from such orders under the Eleventh Amendment to the United States Constitution and that the Director is considered the State for purposes of sovereign immunity.

The court need not decide whether the Director stands in the shoes of the State for purposes of sovereign immunity because the State has no such immunity. In Central Virginia Community College v. Katz, 546 U.S. 356, 126 S.Ct. 990, 1005 (2006), the Supreme Court held that states ceded their sovereign immunity by agreeing to the Bankruptcy Clause in Article One of the Constitution. It rejected dicta in previous opinions of the Court suggesting that sovereign immunity may apply in bankruptcy proceedings. Instead, it held that the power granted to Congress to enact bankruptcy legislation carried with it a power to subordinate state sovereignty. The states, by assenting to the Constitution, agreed "not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to "laws on the subject of Bankruptcies." Central Virginia, 126 S.Ct. at 1005 (citations omitted). The Court specifically found that it was not necessary to decide whether the action to recover preferential transfers from a state at issue in the case should be characterized as an *in rem* proceeding because the power to avoid such transfers existed at least since the 18th century and was thus part of what the states knew would be permitted under the bankruptcy laws to be enacted.

In this case, the obligation to obtain control of assets of the estate is a bankruptcy power even more fundamental than the right to retrieve preferential payments. Under Central Virginia, the states have unquestionably waived their sovereign immunity with respect to any issue relating

to turnover of property of the estate. See, e.g., In re Ravenwood Healthcare, Inc., Adv. No. 04-1383-JS, 2006 WL 4481985, at *1 (Bankr. D. Md. Oct. 12, 2006) (bankruptcy court has jurisdiction to compel § 542 turnover); In re Kids World of Am., Inc., 349 B.R. 152, 164 (Bankr. W.D. Ky. 2006) (Eleventh Amendment immunity did not apply to preclude bankruptcy court's jurisdiction over state agency in turnover action). Therefore, sovereign immunity does not prevent the court from ordering the Director to turn over all property of the estate that is in his control pursuant to the Order of Conservation.

**B.    Automatic Stay**

Second, the State asserts, even if the property in its possession is deemed to be property of API's bankruptcy estate, the automatic stay under § 362(a) does not prevent the Director from liquidating API in state court. The State contends that the police and regulatory power exception to the automatic stay in § 362(b)(4) applies to the Director's actions as conservator and his efforts to liquidate API under the Illinois Insurance Code. Section 362(b)(4) provides that: "The filing of a petition ... does not operate as a stay – ... (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power." 11 U.S.C. § 362(b)(4). The State asserts that the Director's role as conservator "serves the State's regulatory functions" and that his effort to be appointed receiver in the state court "rehabilitation" action fall within his regulatory function under the Insurance Code. The State

therefore argues that the Director is not subject to the automatic stay and can continue its liquidation proceedings against API in state court despite the filing of this bankruptcy case.

First, the State's argument must fail because the automatic stay is not relevant to the turnover issue presented in this motion. The Director is bound by the provisions of § 543(b) whether or not the automatic stay applies. The State previously raised this argument as a basis for dismissing the case. While the argument had no direct relevance to the motion to dismiss either, the court addressed the issue because the State appeared to be seeking a ruling from the court on the issue to govern its future conduct. Because the State has again raised the issue in response to the motion to compel turnover, the court will again explain that even if the issue were relevant to the turnover issue, the regulatory power exception to the automatic stay does not apply to the Directors efforts to liquidate API in state court.

The State's interpretation of the regulatory power exception to the automatic stay in § 362(b)(4) goes well beyond the limits of this exception. Interpreting § 362(b)(4) to permit a state to conduct parallel liquidation proceedings would defeat the fundamental purpose of the Bankruptcy Code. "[F]ederal bankruptcy law in general, and the automatic stay in particular, exist in part to centralize the process of distributing the debtor's estate among its creditors." In re Emerald Casino, Inc., No. 03 A 01929, 2003 WL 23147946, at *9 (N.D. Ill. Dec. 24, 2003), aff'd sub nom., Village of Rosemont v. Jaffee, 482 F.3d 926 (7th Cir. 2007). "The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors." In re Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982). Nothing in § 362(d)(4) evidences a Congressional intent to permit a parallel state court liquidation to proceed under the guise of a state's regulatory power.

The term "regulatory power" is not defined in the Bankruptcy Code. However, "the statute's legislative history states that § 362(b)(4) includes a governmental unit's suits against a debtor 'to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws.'" In re Phillips, No. 06-3061, 2007 WL 1264027, at *5 (Bankr. N.D.Ind. March 27, 2007) (citing H.R.Rep. No. 595, 95th Cong., 1 st Sess. 343 (1977); In re Herrera, 194 B.R. 178, 184-85 (Bankr.N.D.Ill.1996).

The Seventh Circuit addressed this issue in Cash Currency, 762 F.2d at 554-55. The court held that an action filed by the Illinois Director of Financial Institutions under the liquidation provisions of the Illinois Community Currency Exchange Act did not fall under the regulatory power exception to the automatic stay in § 362(b)(4). Id. at 555. The court stated that the § 362(b)(4) exception applies "to the enforcement of state laws affecting health, welfare, morals and safety, but not to regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." Id. (citation omitted). The court held that the State's liquidation proceeding did not fall within the ambit of §364(b)(4) for two reasons: (1) because the liquidation proceedings under the Community Currency Exchange Act served only to protect the rights of creditors, not to enforce laws affecting health, welfare, morals, and safety, and (2) because the liquidation procedures "directly conflict with the control of the property by the bankruptcy court," Id.

The State argues that the 1998 amendments to § 362(b)(4) had the effect of overruling Cash Currency. Before 1998, the exception in § 362(b)(4) applied only to actions stayed in § 362(a)(1) - "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor...." 11 U.S.C. § 362(a)(1). In 1998, § 362(d)(4) was amended

-8-

to apply to proceedings stayed in § 362(a)(3) - "to obtain possession of property of the estate ... or to exercise control over property of the estate." 11 U.S.C. 362(a)(3). See In re Emerald Casino, 2003 WL 23147946, at *9. This amendment expanded the exception to allow states to pursue regulatory actions even if they conflict with the bankruptcy court's control of property of the estate. The State argues that this amendment effectively overruled Cash Currency and that it may pursue its liquidation of API as part of its regulatory power.

The State's argument fails because the 1998 amendments to § 362(b)(4) only partially overruled Cash Currency. While state authorities are no longer prevented from taking regulatory action against property of the estate, the amendments did not affect the court's conclusion that liquidation proceedings designed to protect the rights of creditors are not regulatory actions that fall within this exception. As noted in Emerald Casino, "the court [in Cash Currency] found that the State's interest was to protect the rights of other creditors, an interest that is not regulatory within the meaning of § 362(b)(4). ... Therefore, the State could not take control of the property when it did not have a valid regulatory interest." Emerald Casino, 2003 WL 23147946, at *7.

The State in Emerald Casino was clearly pursuing a regulatory action. It sought to revoke the debtor's gaming license based upon the debtor's prior misconduct. Emerald Casino, 2003 WL 23147946, at *8. The State was concerned about the debtor's possible commission of fraud and its connection to organized crime. Id. at *2. Revocation of the debtor's gaming license was necessary to prevent further fraud, protect consumers and ensure the safety of casino patrons. Id.

By contrast, in this case, the State is not enforcing any laws intended to protect the health, welfare or safety of the public. API had ceased conducting business in February 2007, before it

filed for bankruptcy. The State filed its rehabilitation proceeding to control the liquidation of API's assets, not to enforce any particular violation of the Service Contract Act. As in Cash Currency, the State's actions here are solely for the benefit of API's creditors. Because the State is not acting in its regulatory capacity, the regulatory and police power exception to the automatic stay in § 362(b)(4) does not apply. Therefore, the regulatory power exception to the automatic stay does not provide a basis in any event for denying the Trustee's motion to compel the State to turnover API's property to the Trustee.

### C. API's Prepetition Assignment for Benefit of Creditors

The State further argues that API transferred all of its assets to the API Creditors' Trust before it filed for bankruptcy and therefore has no assets to administer in bankruptcy. It argues that § 541(a)(1) of the Bankruptcy Code limits the bankruptcy estate to the "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The State contends that, because API voluntarily transferred its assets and forfeited its rights, there are no assets in its bankruptcy estate.

The State's argument is refuted by the plain text of the Bankruptcy Code. Section 543(b) expressly contemplates that a debtor can seek turnover of its assets subsequent to an assignment for the benefit of creditors. That provision requires a "custodian" to turn over to the Trustee all property in his possession. 11 U.S.C. § 543(b). As noted above, the definition of "custodian" explicitly includes "assignee under a general assignment for the benefit of the debtor's creditors." 11 U.S.C. § 101(11)(B); see also Rosenberg v. Friedman (In re Carole's Foods, Inc.), 24 B.R. 213, 214 (1st Cir. B.A.P. 1982) (citing legislative history evidencing Congress' intent that "property of the debtor" includes property previously assigned for the benefit of creditors).

-10-

Consequently, assets that were transferred to an assignee pre-petition are nonetheless part of the debtor's bankruptcy estate and must be turned over to the Trustee.

### D. Potential Harm to Consumer Creditors

The State next asserts that turnover of the API's assets will harm consumers across the country. The State argues that there appears to be improper commingling of funds needed to service API's obligations and other improprieties that disqualify API from administering its affairs. This argument is not persuasive for at least two reasons. First, although the issue would be relevant to a motion to appoint a chapter 11 trustee, it is not relevant to a motion for turnover. Second, while the State may be correct that API's previous management engaged in improper activities, its argument is moot because the court appointed a chapter 11 trustee to manage the debtor.

### E. The Barton Doctrine

The State also contends that the Trustee's turnover motion must be denied because API (and now the Trustee) have not sought leave from the state court that issued the Order of Conservation to pursue their motion against the Director. The State relies on Barton v. Barbour, 104 U.S. 126 (1881), in which the court held that a party may not maintain a suit against a court-appointed receiver to recover from the assets of the corporation in receivership without leave of the appointing court. See Barton v. Barbour, 104 U.S. 126 (1881); see also In re Berry Publ'g Servs., Inc., 231 B.R. 676, 677 n.1 (Bankr. N.D. Ill. 1999). The State therefore argues that API, and presumably now the Trustee, must seek approval of the state court before proceeding against the Director or the API Creditors Trust for turnover of assets.

However, § 543(b) of the Bankrutpcy Code, which was enacted long after Barton was decided, expressly requires the turnover of a debtor's assets that are subject to state court orders. Section 543(b) applies to "custodians," including a "receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A). Consequently, § 543(b) supercedes the Barton doctrine with respect to a debtor bringing an action to compel the turnover of its property.

The Barton doctrine, which developed under federal common law, worked in effect like the automatic stay in bankruptcy cases. It was intended to prevent one creditor from getting priority over other creditors by executing against the corporation's assets and defeating a state court receiver's attempt to equitably distribute assets to all creditors. The doctrine has no application to a debtor in bankruptcy because the Bankruptcy Code contains the controlling federal law on the subject. Just as a state court order appointing a receiver cannot prevent a debtor from filing for bankruptcy, see, e.g., Cash Currency, 762 F.2d at 552-53, a debtor need not obtain the approval of the state court to obtain control of property of the estate. Therefore, the Barton doctrine does require this court to deny the Trustee's motion to compel turnover.

The holding in In re CITX Corp., 302 B.R. 144 (Bankr. E.D. Pa. 2003), on which the State relies to support its argument, does not affect this conclusion. In CITX, the bankruptcy court recognized the validity of part of the Barton doctrine in the context of a chapter 7 trustee who sued the court-appointed receiver of a creditor for, among other things, alleged preferential, fraudulent and post-petition transfers. However, the court in CITX also explicitly recognized that if the trustee had been seeking turnover of property from a receiver of the debtor, § 543(b) would apply. Id. at 151 (citing, among other authorities, Cash Currency, 762 F.2d at 553).

"[S]ection 543 has been applied where a state court receiver is appointed for an entity and that same entity later becomes a debtor in a bankruptcy case." Id. Thus, the court recognized that, when § 543 applies, the portion of the Barton doctrine that remains in effect does not protect a court-appointed receiver from being required to turn over property of the estate. Thus, the CITX decision does not support the State's argument that the Barton doctrine requires the Trustee to seek permission from the state court before taking action against the Director as conservator of API..

### F. The Rooker-Feldman Doctrine

Finally, the State asserts that granting the Trustee's turnover motion would be an impermissible modification to the Conservation Order under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine precludes lower federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The State asserts that API is attempting to overturn the Conservation Order entered by the State Court by forcing the Director to turn over all of the API Creditors Trust's property. Without referring to the controlling decision of the United States Supreme Court in Exxon Mobil, the State argues that the Trustee can only challenge the Conservation Order in state court.

The State's argument fails for two reasons. First, the Rooker-Feldman doctrine only precludes federal courts from reviewing state-court judgments rendered before the federal court proceedings commenced. See id. In this case, the Order of Conservation is not a judgment resulting from an adjudication on the merits of the State's claims against API. Instead, the state

court entered an order granting provisional *ex parte* relief on the same day the complaint was filed. The Director then filed a second complaint, its Complaint for Rehabilitation, which was stayed by the commencement of this bankruptcy case before there was any adjudication on the merits in state court. The Supreme Court "has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 292. The *ex parte* Order of Conservation entered on the day the case was filed is not a final judgment. Consequently, the Rooker-Feldman doctrine does not preclude this court from granting the Trustee's turnover motion.

Second, the Rooker Feldman doctrine does not apply to this issue in any event. It is a jurisdictional doctrine premised on the constitutional principal that only the United States Supreme Court may review a decision of a state court. In this case, there is no doubt that the bankruptcy court has jurisdiction to decide this issue at hand - it is solely an issue of bankruptcy law. There is no need to determine whether the state court properly applied state law in entering the Order of Conservation. It is ineffective under bankruptcy law regardless of whether the state court correctly applied the relevant state law in issuing the order. See Cash Currency, 762 F.2d at 552 ("a corporation may not be precluded by state law from availing itself of federal bankruptcy law"). Thus, the Rooker-Feldman doctrine has no application to this motion in any event.

## IV. Conclusion

For all of the foregoing reasons, the Trustee's motion to compel the Director to turnover to the Trustee any property of API's estate in his possession and for an accounting of all such property in accordance with § 543(b) is granted.

Dated: July 3, 2007

ENTERED

_____
CAROL A. DOYLE
United States Bankruptcy Judge